IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLE G.[1] | : | |
| *on behalf of* J.A.W, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| CAROLYN COLVIN,[2] | : | No. 22-00076 |
| Commissioner of Social Security | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**PAMELA A. CARLOS**
**U.S. MAGISTRATE JUDGE**                                                                 December 9, 2024

Plaintiff Nichole G. ("Plaintiff" or "Ms. G."), on behalf of her minor child, J.A.W, appeals the Commissioner of Social Security's final decision to deny her application for Child Supplemental Security Income ("SSI"). She contends that several of the Administrative Law Judge's ("ALJ") findings at Step Three of the childhood sequential evaluation are not supported by substantial evidence. Plaintiff explains that although the ALJ found that J.A.W. suffers from severe asthma, specific learning disability with speech delay, oppositional defiance disorder, and a neurodevelopmental disorder, the ALJ nevertheless found that his impairments do not singly or in combination meet or medically equal the criteria set forth in the regulations. In this regard, Plaintiff insists that the ALJ inadequately considered the degree in which J.A.W.'s highly structured environment and additional medication contributed to his cited improvement across several functional domains. According to Plaintiff, "[t]he ALJ's decision demonstrates a pattern

---

[1]   In accordance with the Court's recent standing order on party identification in social security cases, I have referred to the plaintiff solely by her first name and last initial. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf.

[2]   Carolyn Colvin became Acting Commissioner of Social Security on November 30, 2024. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin should be substituted as the defendant in this matter.

1

of documenting improvement in functioning while clearly omitting the 'extra help' received by J.A.W. in order to function." *See* Doc. No. 8. Had the ALJ appropriately considered this, Plaintiff insists she would have been compelled to find that J.A.W. had more significant limitations across several domains, and was thus disabled. As such, Plaintiff urges the Court to reverse the decision of the Commissioner and order that J.A.W. be entitled to benefits, or alternatively, to order a remand of the claims to the Commissioner for a new hearing.

The Commissioner disagrees, arguing that the ALJ's analysis was appropriate under the governing regulations. The Commissioner emphasizes that it is not the role of this Court to reevaluate the evidence and substitute its judgment for that of the ALJ. The Court instead must defer to the findings of the ALJ so long as they are supported by "substantial evidence," which is not an exacting standard. In this regard, the Commissioner explains that the ALJ thoroughly analyzed the record and reached the same conclusions as several state-agency experts who likewise were charged with reviewing J.A.W.'s application. The Commissioner explains that Plaintiff failed to identify any evidence in the record that the ALJ overlooked or failed to consider when reaching her detailed decision. In short, the Commissioner explains that the ALJ recognized that J.A.W. had several limitations. While Plaintiff might insist that the ALJ should have concluded that these limitations were more extreme, Plaintiff's arguments are nothing more than an improper request of the Court to reweigh the evidence.

For the reasons that follow, I will affirm the Commissioner's decision, and Plaintiff's request for review is denied.

I.     **BACKGROUND**

    A.     **Procedural History.**

Plaintiff protectively applied for Child SSI benefits under the Social Security Act ("SSA" or "the Act") in October 2019. R.67. Plaintiff's application was initially denied on February 5, 2019, and she timely requested a hearing on December 8, 2020. R.81-84, 93. On March 25, 2021, and represented by counsel, Plaintiff appeared and testified at a hearing before an ALJ, who ultimately issued a decision finding that J.A.W. was not disabled and thus was not entitled to benefits. R.12-30. Plaintiff then timely requested review of the ALJ's Decision by the Appeals Council on June 9, 2021. R.155-57. On November 5, 2021, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final decision. R.1-6, 407-09. Plaintiff now timely seeks judicial review of the ALJ's decision.[3]

    B.     **ALJ's Decision.**

The ALJ evaluated Plaintiff's childhood disability claims using the three-step sequential analysis set forth in the Social Security regulations.[4] Beginning at step one, the ALJ determined that J.A.W. did not engage in substantial gainful activity since October 30, 2019, the application date. R.16. At step two, the ALJ found that J.A.W. suffered from the following severe impairments: asthma, specific learning disability with speech delay, oppositional defiance disorder, and a neurodevelopmental disorder. R.15 (citing 20 CFR § 416.924(c)). The ALJ further found that

---

[3]     The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C § 636(c). *See* Doc. No. 6.

[4]     In evaluating childhood disability claims, the Commissioner applies a three-step process. The Commissioner considers first whether the child is working; second, whether the child has a medically determinable "severe" impairment or combination of impairments; and third, whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment listed in the regulations. 20 C.F.R. § 416.924(a).

J.A.W has congenital melanocytic nevus and eczema, but explained that these impairments are "non-severe" insofar as they cause no more than minimal functional limitations. R.16.

Moving to step three, the ALJ concluded that J.A.W. does not have an impairment or combination of impairments that meets or medically equals the requirements of the impairments listed in 20 CFR Part 404, Subpart P, Appendix. R.16-17 (citing 20 CFR §§ 416.924, 416.925, and 416.926). Specifically, the ALJ compared J.AW.'s impairments to Listings 103.03 (asthma), 112.02 (neurocognitive disorders), 112.08 (personality and impulse-control disorders), and 112.11 (neurodevelopmental disorders). R.17. The ALJ considered the four broad areas of mental functioning set out in the regulations for evaluating mental disorders and in section 112.00 of the Listing of Impairments. R.17 (explaining that these are also known as the "paragraph B" criteria). These functional areas include the ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. The ALJ explained, to satisfy the "paragraph B" criteria, J.A.W.'s mental impairments must result in at least one "extreme" or two "marked" limitations in the functional areas. In this regard, the ALJ found that J.A.W. had a "marked" limitation in the ability to concentrate, persist, or maintain pace, but only "moderate" limitations in the other three areas. R.17-19.

Next, the ALJ concluded that J.A.W. does not have an impairment or combination of impairments that functionally equals the severity of the listings. R.20 (citing 20 CFR §§ 416.924(d) and 416.926(a)). Specifically, the ALJ explained that she must evaluate the "whole child," by considering "how the claimant functions at home, at school, and in the community; the interactive and cumulative effects of all of the claimant's medically determinable impairments on the claimant's activities; and the type, extent, and frequency of help the claimant needs." R.20. This analysis requires evaluation of how the child functions across six domains. R.20. To functionally

4

equal the listings, the claimant's impairments must result in "marked" limitations in two domains, or an "extreme" limitation in one. R.20. Having considered the relevant evidence, the ALJ found that J.A.W had a "marked" limitation in only one of the six domains (attending and completing tasks), a "less than marked" limitation in four of the six domains (acquiring and using information; interacting and relating with others; ability to care for oneself; and health and physical well-being), and "no" limitation in one domain (moving about and manipulating objects). R.20.

In connection with the instant appeal, Plaintiff challenged the ALJ's findings with respect to three of the domains. First, Plaintiff argued that the ALJ erred in concluding that J.A.W. did not have an "extreme" impairment in the domain of attending and completing tasks. *See* Doc. No. 8 at 8-17. After briefly summarizing his medical history and some of the hearing testimony, the ALJ specifically addressed this domain. R.21-22. She explained that prior to his application date, J.A.W.'s scores on the Conners Scales fell in the "Elevated" or "Very Elevated" ranges in all areas of concern, "which was consistent with attention related disorder such as Attention Deficit Hyperactivity Disorder." R.22 (citing Ex. 1F at 20). J.A.W's scores on the Behavior Rating Inventory of Executive Functioning also indicated that he would often act on impulse. R.22 (citing Ex. 1F at 24). The ALJ further noted that in December 2019, J.A.W. presented to developmental pediatrician Nandini Iyengar, M.D. for ADHD. R.23. Although he was "very fidgety" and had trouble paying attention and following instructions in school, he saw improvement since starting Focalin XR in December 2017. R.23. Several months later, in February 2020, pediatrician Meghan D. Burke, M.D., provided Plaintiff with a list of community therapists to provide additional support, and by September that same year, J.A.W. worked exclusively with the guidance counselor and behavioral specialist at his school. R.23. Plaintiff reported that J.A.W. was "doing well" during this time. R.23 (citing Ex. 4F at 8). Finally, the ALJ observed that during the 2020-2021 school

year, J.A.W. "responded well to efforts to redirect his behavior," and that "[b]eing able to work in small group setting seemed to really help him to stay focused and engaged." R.23 (citing Ex. 9F at 50). The ALJ explicitly noted that his classwork was "very structured and supported by an adult," but nevertheless, in March 2021, "his Special Education teacher observed that he was able to complete all assignments and keep up with work without falling behind." R.23 (citing Ex.10F at 26).[5] Given the above, the ALJ concluded that J.A.W. had a "marked" limitation in attending and completing tasks.

Plaintiff also argued that the ALJ erred in concluding that J.A.W. did not have a "marked" impairment in the domain of interacting and relating with others and the domain of caring for yourself. *See* Doc. No. 8 at 17-27. As to these issues, the ALJ observed that in January 2019, J.A.W.'s behavior "was inconsistent, as he could be belligerent and required frequent redirection." R.24 (citing Ex. 1F at 3). The ALJ further noted that his inability to "regulate his emotions and impulsivity negatively impacted his relationships with adults," and that his first trimester report card for the 2019-2020 school year showed that he "needed improvement in initiating and maintaining appropriate social interactions with peers." R.24  Indeed, his behaviors were "out of control" in a large classroom setting. R.24 (citing Ex. 5F at 11). However, the ALJ observed that J.A.W. "worked well in small groups," and that by the 2020-2021 school year, he was "pleasant, friendly, and positive in class." R.24. By this time, J.A.W. "had become a great leader in class" and had become a much more active participant in group therapy. R.24 (citing Ex. 9F at 50).  While

---

[5]   In a Teacher Questionnaire completed on March 8, 2021, J.A.W's teacher, Ms. Klos, observed that he had problems functioning in the "Attending and Completing Tasks" domain. R.599. Of the thirteen specific areas noted in the questionnaire, Ms. Klos indicated that J.A.W. had an "obvious problem" in only one area ("focusing long enough to finish assigned activity or task"), but had a "slight problem" in seven other areas. R.599. She did not find any "serious" or "very serious" problems across these criteria.  Finally, Ms. Klos noted that J.A.W.'s classwork is "very structured" and "supported by an adult," but explained that he is able to complete all assignments and keep up without falling behind. R.599.

he did not like to lose when playing games, the ALJ noted that his sportsmanship had improved such that he could congratulate his classmates. R.25 (citing Ex. 10F at 27).

As it concerned J.A.W's ability to care for himself, the ALJ recited a similar pattern. Prior to the protective filing date, J.A.W. had difficultly regulating his emotional responses and modulating his emotions. R.25 (citing Ex. 1F at 24 and Ex. 95F at 26). Despite several documented challenges during the 2019-2020 school year, the ALJ observed that J.A.W.'s behavior improved. R.25. Pediatric treatment notes in September 2020 indicated that "there were no concerns regarding [J.A.W.'s] emotional well-being." R.25 (citing Ex. 4F at 9). While in an emotional support classroom setting, J.A.W.'s outbursts became less frequent, and he "was doing a nice job of implementing strategies acquired in group counseling when confronted with a challenging task or when bothered by another student." R.25 (citing Ex. 9F at 50).

Given these findings, the ALJ found that J.A.W. has not been disabled since the date his application was filed, and therefore, was not entitled to benefits. R.27.

## II.  STANDARD OF REVIEW

Judicial review of a social security disability determination is "limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The agency's factual findings are "conclusive," and therefore must be upheld, if they are supported by "substantial evidence." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding standard. *Id.* at 1154. All it means is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1153 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). In applying this deferential standard of review, the Court

"must not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford*, 399 F.3d at 552). In other words, the Court must not re-weigh the evidence before the ALJ, but instead must assess whether substantial evidence supports the ALJ's findings. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").

In doing so, the Court determines whether the ALJ's decision "meets the burden of articulation demanded by the courts to enable informed judicial review." *Kenyon v. Saul*, No. 1:20-CV-1372, 2021 WL 2015067, at *5 (M.D. Pa. May 19, 2021). In this regard, the ALJ need not "employ particular 'magic' words" or "adhere to a particular format in conducting his analysis." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir. 2004)). The Court requires—at the very least—that the ALJ "set forth the reasons for [their] decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

### III. DISCUSSION

A minor child "shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *T.C. ex rel. Z.C. v. Comm'r of Soc. Sec.*, 497 F. App'x 158, 160 (3d Cir. 2012) (citing 42 U.S.C. § 1382c(a)(C)(i)). When considering when an impairment (or combination of impairments) is functionally equivalent to "the severity of an impairment in the Listings," the ALJ assesses six "domains of functioning." *Id.* (citing 20 C.F.R. § 416.926a). The six domains are as follows: (1) acquiring and using information; (2) attending to

and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). "A marked limitation in two domains or an extreme limitation in one establishes functional equivalency." *Weaver on behalf of R.F. v. Kijakazi*, No. CV 20-1669, 2022 WL 3647827, at *1 (W.D. Pa. Aug. 24, 2022) (citations omitted). The regulations define an "extreme" limitation in a domain when an impairment(s) "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities," whereas a "marked" limitation is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)-(3).

Plaintiff challenged the ALJ's unfavorable decision by arguing that the ALJ committed reversible error by failing to find that J.A.W's impairments were functionally equivalent to a listing. *See* Doc. No. 8 at 8-27. For each contested area, Plaintiff recited J.A.W.'s well-documented behavioral and emotional challenges starting as early as 2016 before arguing that the ALJ erred in finding that J.A.W. did not have an "extreme" impairment in the domain of attending and completing tasks and in finding that J.A.W. did not have a "marked" (or more severe) impairment in the domains of interacting and relating with others and caring for yourself.[6]

But the common thread across each challenge is Plaintiff's repeated contentions concerning J.A.W.'s documented "improvement" and the ALJ's analysis of the same. Plaintiff does not dispute that J.A.W.'s grades improved over time and that "he had improved greatly in his behavioral needs" during the 2020-2021 school year. *See id.* at 15, 18. Nor could she—there is ample evidence in the record to support these observations.[7] However, Plaintiff argued that the

---

[6] This evidence is discussed at length in Plaintiff's brief, Defendant's Response in opposition, and in the ALJ's Decision. A full recounting here is not necessary to resolve the outstanding issues.

[7] For example, in J.A.W.'s evaluation report dated January 17, 2019, his school counselor explained that J.A.W. "has been helpful, attentive and an integral part of why [the small] group has had so much success." R.507. He further explained that J.A.W. "always listens and participates and was able to apply many of the concepts learned from group." R.507. Following an office visit in December 2019, Dr. Iyengar explained that J.A.W. was started on

9

ALJ failed to acknowledge that J.A.W's improved behavior and other positive outcomes was largely attributable to the extra help and support that J.A.W received, including medication and a highly structured learning environment. *See id.* at 14, 16, 18, and 21. In this regard, Plaintiff argued that the ALJ "did not properly provide adequate consideration of how J.A.W. would function without the structure or supportive setting, as is required by the regulations." *See id.* at 16. And had the ALJ engaged in such analysis, she would have been compelled to find that J.A.W. had more severe limitations and was thus disabled.

Plaintiff is correct that "consideration of 'structure or supportive settings' is critical to an ALJ's consideration of functioning.'" *Weaver on behalf of R.F.*, No. CV 20-1669, 2022 WL 3647827, at *1 (citing *A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 520 (D.N.J. 2016)). "Because a structured setting often masks the symptoms of a disability and improves the child's ability to function within that supportive environment, the ALJ is instructed to consider the degree of limitation in functioning the child has or would have outside the structured setting." *A.B. on Behalf of Y.F.*, 166 F. Supp. 3d at 520. In other words, "an ALJ cannot appropriately evaluate the effects of [a claimant's] structured setting on his ability to function without identifying the nature of his structured setting and the amount of help he receives from it." *Id.* (citing *Gonzalez v. Astrue*, No. 1:07–cv–00487, 2009 WL 4724716, at *6–7 (N.D.N.Y. 2009)). However, the fact that a claimant "was in special education does not in itself constitute a statutory disability." *Richardson v. Barnhart*, 136 F. App'x 463, 466 (3d Cir. 2005) (citation omitted).

---

ADHD medication in December 2017 with subsequent increases in his dosage. R.419. The doctor explained that "[s]ince then he did much better in school and his grades are getting better," though she noted residual issues with impulsivity and poor behavior. R.419. In his Individualized Education Program (IEP) write-up dated March 4, 2021, his special education teacher described J.A.W. as "a pleasant, friendly, positive student to have in class." R.580. His teacher specifically noted that earlier in the year he had several "undesired behaviors such as grunting, kicking desks, punching walls…" R.580. Despite this, his teacher observed that he had improved "greatly in his behavior needs" and he had become a "great leader in class." R.580.

Plaintiff's contentions, however, are overstated. Upon review of the ALJ's Decision, it is apparent that the ALJ considered J.A.W.'s limitations in light of his special education placement, his medication, and the other supports he received. More specifically, the ALJ not only acknowledged the extra support that J.A.W. received, but explicitly considered how his condition changed with the introduction of prescription medication and a structured learning environment. For example, the ALJ explained that "[s]ince starting Focalin XR (dexmethylphenidate), [J.A.W. has] done much better in school and his grades had improved." R.18 (citing Ex. 5F at 5). The ALJ also explained that J.A.W. "has been able to attend school in both the regular education and special education settings." R.19 (citing Exs. 1F at 63; 9F at 50; 10F at 7). When assessing the "acquiring and using information" domain, the ALJ explicitly acknowledged that J.A.W. was "eligible for intensive instruction in reading," and that he "received a supplemental level of special education support." R.23 (citing Ex. 1F at 32, 63). Indeed, the ALJ explained that J.A.W. "needed a lot of support and scaffolding in order to complete assignments in Reading and Math," and that he was often supported by an adult. R.24. But within this structure, he was making progress and "had an excellent grasp of basic mathematical concepts." R.23-24. Again, when assessing the "interacting and relating with others" domain, the ALJ acknowledged that J.A.W. struggled in a large classroom setting, but that "he worked well in small groups." R.24 (citing Ex. 5F at 11). The ALJ further described the supports he received in a special education setting, and explicitly cited the observations of his special education teacher, who noted that J.A.W. had "contributed positively to the classroom environment," and that he "was well liked by his peers." R.24, 25. And finally, when assessing the "caring for yourself" domain, the ALJ acknowledged that J.A.W. remained in the "emotional support classroom," and that within these structures his behavior "improved significantly" over the course of the 2020-2021 school year. R.25. Contrary to Plaintiff's

suggestion, the ALJ's decision did *not* omit the extra help that J.A.W. received in order to function. Instead, the decision reflects a careful consideration of how J.A.W. functioned both before and after receiving additional support.

Having rejected Plaintiff's arguments concerning J.A.W's structured learning environment and his improved condition, I further find that the ALJ's analysis for each of the disputed domains is supported by substantial evidence. The U.S. Supreme Court has made clear that "the threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. In this regard, the ALJ's decision more that satisfactorily clears this threshold. As the Commissioner correctly explained in opposing Plaintiff's request for review, the ALJ's decision reflects a detailed consideration of the relevant evidence longitudinally—that is, she reviewed J.A.W's behaviors, treatment, setbacks, and reported progress over the span of several years. *See* Doc. No. 9 at 8. This evidence included diagnostic evaluations, teacher reports and observations, and treatment notes from multiple medical providers, together with Plaintiff's hearing testimony concerning J.A.W.'s behavior at home, in school, and elsewhere. Moreover, four state-agency experts charged with reviewing J.A.W.'s application made findings similar to those made by the ALJ. R.27, 62-63, 75-76.[8]

Notwithstanding this, Plaintiff's request for review focused primarily on J.A.W.'s earlier behavioral challenges and argued that this evidence, together with J.A.W.'s need for a highly structured learning environment, demonstrates that he has more significant limitations than those found by the ALJ. In opposing Plaintiff's Request for Review, the Commissioner acknowledged

---

[8] As the ALJ explained, "[p]rior administrative medical findings were made at the initial and reconsideration levels of adjudication by Marci Cloutier, Ph.D. on January 23, 2020 and Catherine Smith, M.D. on February 4, 2020 . . . as well as Dennis C. Gold, Ph.D. on October 30, 2020 and Michael Francis Lombard, M.D. on November 3, 2020." R.27 (citing Exs. 1A and 3A). The ALJ explained that all four doctors "opined that the claimant has a marked limitation in attending and completing tasks and a less than marked limitation in acquiring and using information, interacting and relating with others, caring for himself, and health and physical well-being." R.27. She found these opinions to be persuasive insofar as they were consistent with the educational and medical record. R.27. Plaintiff did not challenge any aspect of these opinions.

these same behavioral challenges, but explained that Plaintiff's evidence largely predated some of the later reports that the ALJ also surveyed and relied upon in making her findings. *See* Doc. No. 9 at 7. Indeed, the Commissioner emphasized that "Plaintiff identifies no evidence overlooked by the ALJ in the course of her detailed decision,"[9] and her argument is "tantamount to a request to reweigh the record evidence," which is "impermissible under the substantial evidence standard of review." *See id.* at 2, 9. I agree with the Commissioner. However unsatisfied Plaintiff may be with the ALJ's findings, it is not the responsibility of this Court to reweigh the evidence or to impose its own factual determinations. The Court's review is limited, and upon undertaking that responsibility, I find that the ALJ reviewed the record and explained her reasons for finding Plaintiff had only "marked" or "less than marked" limitations across several domains. As explained above, those reasons are supported by more than a "mere scintilla of evidence." *See Chandler*, 667 F.3d at 359.[10]

---

[9] In her Reply Brief, Plaintiff argues, for the first time, that the ALJ failed to address critical evidence, including a March 7, 2021 email from J.A.W.'s basketball coach regarding his poor behavior and his inability to control his emotions. *See* Doc. No. 10 at 2-4. Plaintiff argued that the "ALJ must provide not only an analysis of the evidence that supports the result, but also some indication of how the ALJ dealt with the evidence that was rejected." *See id.* at 5. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *See id.* (citation omitted). However, because this issue was raised for the first time in Plaintiff's reply brief, it is deemed waived. *See Wilson v. Colvin*, 218 F. Supp. 3d 439, 452 (E.D. Pa. 2016) ("Arguments not raised in an appellant's opening brief are deemed waived.") (citing *Lucas v. Barnhart*, 184 Fed. App'x 204, 206 n.1 (3d Cir. 2006); *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993)).

[10] Plaintiff also argued briefly that J.A.W. met or medically equaled Listings 112.02, 112.08, and/or 112.11. *See* Doc. No. 8 at 27-28. However, this argument, which consists of no more than a single paragraph, simply referred to the arguments and evidence discussed earlier in her brief. *See id.* at 28 (noting that the brief refers to Argument I, Parts A, B, and C). Having already concluded that Plaintiff's earlier arguments are without merit, it logically follows that these arguments fail for the same reasons.

## IV.     CONCLUSION

Plaintiff's request for review is **DENIED**. The Court finds that the ALJ's decision was supported by substantial evidence. As such, the final decision of the Commissioner of Social Security is **AFFIRMED,** and this matter is **DISMISSED.** An appropriate Order follows.

BY THE COURT:

*s/Pamela A. Carlos*
PAMELA A. CARLOS
U.S. Magistrate Judge
